ORIGINAL

Billy Paul Birdwell II
#D-70643 (14-120)
P.O. Box 409060
Ione, CA 95640
**Petitioner in pro se**

FILED

MAR 25 2010

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Blod Tru Hearth-CM, Asatru/Odinist Community; Billy Paul Birdwell II, et al., Plaintiffs, v. M. Cates, CDCR Secretary; N. Grannis, CDCR CIAB; R. Subia, Ass. Director, CDCR; M. Martel, Warden, MCSP; D. Long, Ass. Warden, MCSP; L. Jackson, Ass. Warden, MCSP; H. Lackner, Ass. Warden, MCSP; S. Barham, MCSP Chaplain; M. Kaplan, Captain, MCSP; C. Barroga, Lieutenant, MCSP; S. Petersen, Sergeant, MCSP; M.S. Minnick, Receiving & Release Sergeant, MCSP; E. Rodriguez, Sergeant, MCSP; M.C. Alexander, Correctional Officer, MCSP; V. Vallery, Correctional Officer, MCSP; D. Baptista, MCSP Catholic Priest; K.J Stanford, Correctional Officer, S&E, MCSP; R. Fletes, CCII, MCSP; R. Delacruz, C/O, MCSP. Defendants. | Case No. 2:10-CV-0719 GGH PC<br><br>CIVIL COMPLAINT;<br>JURY TRIAL DEMANDED<br><br>(42 U.S.C. § 1983) |

## I.

## COMPLAINT

Plaintiffs, in pro se, complain under 42 U.S.C. §1983 for violations of rights by prison officials, of the Religious Land Use and Institutionalized Persons Acts of 2000 (RLUIPA); the Americans with Disabilities Act (ADA); and the First Amendment, as applied to the states through the Fourteenth Amendment of the United States Constitution, for acts of discrimination, persecution, and harassment by defendants against plaintiffs for their religious affiliation, and unlawful retalitory acts by defendants when plaintiffs attmpted to secure and enforce said rights; violations of the Establishment Clause by defendants endorsement of religions.

## II.

## JURISDICTION AND VENUE

1.) This Court has jurisdiction over this action under 28 U.S.C. §§1331 and 1343(3)(4). The matter in controversey arise under 42 U.S.C. §1983. Plaintiff also invokes the pendent jurisdiction of the Court.

2.) Venue properly lies in this District pursuant to 28 U.S.C. §1391(b)(2) because the rights giving rise to this cause of action occurred by the California Department of Corrections and Rehabilitation (hereafter CDCR) which is based in Sacramento, and plaintiffs reside at Mule Creek State Prison (hereafter MCSP) in Amador County which is located in the Eastern District.

///

///

## III.

## PARTIES

3.) Plaintiff, Billy P. Birdwell II, a California prison inmate, is confined within the jurisdiction of the CDCR, at MCSP located at 4001 Highway 104, P.O. Box 409099, Ione, California. 95640, in the County of Amador.

4.) Plaintiff, Billy P. Birdwell II is, and was at all times mentioned herein, an adult citizen of the United States, and resident of the state of California.

5.) Plaintiff, Billy P. Birdwell II, is in pro se, is Garman for Blod Tru Hearth-CM, an Asatru/Odinist kindred, representing the interests of the Asatru/Odinist community plaintiffs herein.

6.) Plaintiff Troy Rackley (H78547) is, and was at all times mentioned herein, an adult citizen of the United States, and resident of the state of California.

7.) Plaintiff Fairwell (K70353) is, and was at all times mentioned herein, an adult citizen of the United States, and resident of the state of California.

8.) Plaintiff Mayfield (E24161) is, and was at all times mentioned herein, an adult citizen of the United States, and resident of the state of California.

9.) Plaintiff LeFavour (T89240) is, and was at all times mentioned herein, an adult citizen of the United States, and resident of the state of California.

10.) Plaintiffs, 1-1000, are, and were at all times mentioned herein, adult citizens of the United States, and residents of the state of California.

11.) Defendant, M. Cates, at all relevant times herein, was Secretary of CDCR, and was responsible for the custody and care of all inmates, and the managment of all prisons within the state of California under CDCR jurisdiction. Defendant is sued in his Individual and Official capacity.

12.) Defendant, N. Grannis, at all relevant times herein, was the chief of Inmate Appeals, responsible for the coordination and arbitration of all inmate appeals at the highest level of review for CDCR, the Director's level. Defendant is sued in his/her Individual and Official capacity.

13.) Defendant R. Subia, at all relevant times herein, was Warden for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

14.) Defendant, M. Martel, at all relevant times herein, was Warden for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

15.) Defendant, H. Lackner, at all relevant times herein, was the Associate warden for MCSP for CDCR. Defendant is sued in her Individual and Official capacity.

16.) Defendant, D. Long, at all relevant times herein, was the Associate Warden for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

17.) Defendant, M. Kaplan, at all relevant times herein, was Captain for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

18.) Defendant L. Jackson, at all relevant times herein, was Associate Warden for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

19.) Defendant, S. Barham, at all relevant times herein, was the Correctional Chaplain paid out of the General Fund, for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

20.) Defendant, C. Barroga, at all relevant times herein, was Lieutenant at MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

21.) Defendant, D. Baptista, at all relevant times herein, was the Correctional Catholic Priest for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

22.) Defendant, S. Petersen, at all relevant times herein, was a Sergeant at MCSP for CDCR. Defendant is sued in her Individual and Official capacity.

23.) Defendant, Minnick, at all relevant times herein, was Receiving and Release Sergeant for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

24.) Defendant, E. Rodriguez, at all relevant times herein, was a Sergeant for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

25.) Defendant, K. J. Stanford, at all relevant times herein, was S&E Correctional Officer for MCSP for CDCR. Defendant is sued in her Individual and Official capacity.

26.) Defendant, M.C. Alexander, at all relevant times herein, was a Correctional Officer for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

27.) Defendant, V. Vallery, at all relevant times herein, was a Correctional Officer for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

28.) Defendant, R. Fletes, at all relevant times herein, was a Correctional Counselor II (CCII) for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

29.) Defendant, R. Delacruz, at all relevant times herein, was a Correctional Officer for MCSP for CDCR. Defendant is sued in his Individual and Official capacity.

30.) Defendants, Jane/John Does, at all relevant times herein, are Officials and/or Officers for MCSP and CDCR. Defendants are sued in their Individual and Official capacities.

31.) This action arises under 42 U.S.C. §1983, for deprivation of rights, under color of authority, which has caused real and certain spiritual damage to plaintiffs, and has chilled our pursuit of enforcement due to the retalitory responses of most defendants.

## IV.

## PREVIOUS LAWSUITS BY PLAINTIFFS

32.) Plaintiffs, have not at any other time filed any lawsuits under Federal jurisdiction.

## V.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

33.) Plaintiffs have exhausted all available remedies of the issues raised herein, however, new facts related to the issues are arising on a weekly basis. The issues having been exhausted at the highest administrative level by the Asatru/Odinist plaintiffs. (MCSP-06-02465; MCSP-08-02621; MCSP-09-00734; MCSP-09-00428; MCSP-08-00745; MCSP-08-01850; MCSP-06-2599; MCSP-09-00994; MCSP-09-01309; MCSP-09-01399; MCSP-09-02269; MCSP-09-02232...); MSCP-09-01646)MCSP-09-01711.)MCSP-09-01761

## VI.

## STATEMENT OF FACTS

A. OPENING STATEMENT

34.) For three years the Asatru/Odinist Community here at MCSP, Facility C, has been diligently practicing their religious faith on their own religious grounds (which were approved by a previous Warden), which include Blots, Sumbles, Bael Rites, ect., without a single act of violence, contraband, or any other unlawful acts reportable to prison officials. Notwithstanding this perfect record, the Asatru/Odinist community has been the subject of continuous and constant attacks by prison officials, and blatant documented discrimination. We have been denied access and approval of programs, events, and equal status as that approved for other religious groups, such as equal access to Chapel classrooms; equal access to religious special purchases; equal access to a state chaplain or person who will process our business; equal access to special events and banquets as that afforded other groups; equal authorization to display our religious symbol during services; equal opportunity to conduct religious services without interruption; equal access to grounds time; equal access to the religious budget fund; equal authorization to burn fire in our 'approved' fire pit; equal land size; equal access to materials; equal access to produce and possess religious artifacts as that allowed for the Native Americans; equal access to a sufficient list of approved vendors; equal access and accomodations for our 'Handicapped' participants; equal access to lighters to light candles; and a litany of other situations stated herein.

On the other hand, we have been subjected to attacks and retaliation by prison officials when we appeal these violations; the Warden never finds any of our citizen complaints to have merit; we have been slandered; staff allow us to be hit with sporting equipment during religious services and have refused administrative intervention; our sacred landmarks have been desecrated during searches; searches are conducted on religious grounds without adhering to institutional procedure; our spiritual staff sponsor Steve McNallen had his prison gate pass pulled, and denied access to the prison without cause; Administrative staff have conspired to generate fraudelant disciplinary reports against plaintiffs to 'chill' our litigation, and only when we agree to capitulate, are the threats removed, thus making it nearly impossible to exhaust all of our concerns due to this "chill" and "fear" of retaliation which would have an adverse affect on substantial liberty interests.

If this was not enough, defendants are now disassembling the Asatru/Odinist grounds to force plaintiffs to practice their faith in an area with other groups whose religious practice conflicts with our own; our ancestral mound, ring of mystery, and other sacred, hallowed, and blessed sites are being removed by defendants; and plaintiff Billy Birdwell was threatened that if he did not capitulate, the manufactured CDCR 115 (Log No. C02/10-072) would be reinstated, and that he would be moved to another yard away from his religious circle.

B. WHAT IS ASATRU/ODINISM?

35.) Asatru/Odinism is an ancient religion indigenous to Northwestern Europe. It was the prevailing system of belief in

Scandinavia and much of the continent from prehistory until about 1200 A.D. Although officially repressed after that date, elements of it survived in remote areas until modern times. These remnants, often referred to as "the old ways", fleshed out with archeology, anthropology, mythology, and the study of early manuscripts, have enable people in this century to reconstruct the essence of the Faith and to practice it as a valid religion. Asatru is the Nationally recognized religion of the Country of Iceland.

In the United States, the Asatru Free Assembly (California) was given federal recognition as a bona fide religious organization. It was followed a few years later by the Asatru Alliance (Arizona), and the Ring of Troth (Texas). A degree of state recognition has been given as well, as in the case of the Odinist Fellowship in Florida. Recently, Florida and Texas, as well as California, have both recognized and allowed their inmates to practice the faith of Asatru/Odinism unobstructed (Head Chaplain Jerry Groom gave official recognition in Texas in early 1994). The state of Utah recognizes Asatru/Odinism as a bona fide Faith and permits Mr. Jerry Parker (Hraesvelg Odinsson) to act as religious volunteer at the Draper prison site. Followers of Asatru/Odinism live in all 50 states of the United States and in a number of foreign countries - including most of Europe and Canada. These individuals and Organizations publish a number of periodicals. Some of the more well known include "The Runestone"; "The Odinist"; "Vor Tru"; "Heritage and Tradition"; "OR Briefing," ect. There are numerous vendors which sell Asatru/Odinist religious artifacts to assist in ceremony, such as "World Tree" and "Wyrds Way."

Features of the faith include a distinctive liturgy, a unique religious calendar, and a more or less common body of doctrine, all tracing their genesis from the original practices of ancient Europe. The values of the faith include, freedom, responsibility for ones actions, courage, loyalty, hospitality, self-reliance, and honorable conduct. This faith is highly compatible with any program of self rehabilitation. The mythology (which we hold to be truth) of Asatru/Odinism is a collection of folklore and myth detailing the exploits of the Gods and Goddesses, heroes, and other beings, which collectively give a framework of behavior and belief for those of the faith to live by. Much of the mythology was set down in writing in two volumes of critical importance to the faith; these two volumes are the Poetic Edda and the Prose Edda. A large collection of Sagas also survived; recorded by people such as Snorri Sturlson (1179-1241), a christian historian and poet who labored to ensure that the mythology and beliefs of his native Iceland would not be forgotten. We believe that Odin (or otherwise known as Wotan, Valfather, and many other names) is creator, the High One. The Poetic Edda contains the "High Ones" words in the Havamal and is just as important to us, as the Bible is to Christians; the Tora to Jews; or the Koran to Muslims. The Havamal guides us in conduct toward others, and is referred to those of the faith in matters of love, friendship, wisdom, pride, and reliance. Most of what is related in the Havamal is pure common sense and common courtesy, both of which are sadly disregarded by those living in this modern age. An Odinist is one who worships Odin (implying also a worship of the other Aesir and Vanir, but not necessarily so), an Asatruar is

one who worships the Aesir (including Odin, and implying the Vanir as well). Many Asatru/Odinists attache themselves to a specific Deity, called a Patron Deity and try to immulate their lives to the Deity's specific attributes. A Tyrian, (one who attaches himself to the God Asa Tyr) for example, is one who is more prone to attache him or herself to law, order, structure, and personal sacrafice for the community.

The faith is aspected to heritage and culture, or geographical racial groups (which is no different than the Native Americans or Jewish people and their belief system) (i.e., Northern Europeans, Scandanavians.) The faith is a belief system set of a distinct group of peoples of Indo-European descent. To be more specific, peoples of the Proto-Aryan, and Proto-Frisoscanla branches, or the Aryans, Frisians, and to some extent, the Finno-Ugric and Magyar peoples. In modern terms these would be the Nordic, Germanic, Faeroese, and to a lesser extent, the Celtic/Gaelic, Baltic, and even some Slavic peoples.

While this faith is inherently attuned to the above peoples, others are by no means excluded from the faith. Asatru/Odinists follow their own ancestral path because it is spiritually suited to them, and accordingly, we encourage others to follow their own ancestral paths. Asatru/Odinists divide themselves up into what is called, "Hearths" or "Kindreds" due to the multiple ways the faith is practiced (this is no different than the many Christian groups in this Country). We do not condone racial or religious bigotry. We love our Gods and Goddesses, and in striving to live our lives with honor, we believe that all peoples rights, loves, and concerns should be respected.

C. THE ASATRU/ODINIST RELIGIOUS GROUNDS (LAND)

36.) After many struggles, religious grounds were firmly established for the Asatru/Odinist community, 25' X 21' (525 SQ. FT.) Next to the Wiccan grounds, and the Native American Grounds. (See Attachement); We have been practicing our faith here for three years without a single incident; The grounds are surrounded by a 4' chain link fence just 10' feet away from a handball court. Within these grounds is our 'Ring of Mystery' surrounded by sacred Runestones; in the center is a stone 'Fire Pit' (which we may not have fires in); in the Northern quadrant is a storage locker with lock; in the Eastern quadrant is our Ancestral Mound in the shape of a ship, surrounded by sacred dedication stones; in the Northern section of the Ring of Mystery is the Sacred Harrow (Altar) which has been blessed; in the Western quadrant is the sacred 'Land Wight' offering area; in the Southern quadrant is our water source; and there are two tree stumps for seating.

37.) Within these grounds, plaintiffs have had hundreds of Blots (ceremony/blessings of the Gods); Sumbles (sacred ceremonies and ancestral tributes); Bael (funeral) rites; and many other rites. Everytime a ceremony is conducted, the charged sacred mead is returned to the earth, in this case the Ancestral mound and Harrow which shares the blessings; The Harrow, Ancestral mound, Warding stones, and Land Wight offering area received special blessing and ceremony; and most importantly, a land reclamation ceremony was held directly connecting the area to the Gods.

38.) Our sacred religious grounds is now a sacred enclosure set apart from the mundane world and embued with Ve holiness. We believe

that our Gods have connected themselves to the land making it their own holy dwelling, which is shared with the Alfar, Disir, Wights, and Ancestral spirits.

39.) We believe that our connection with these Gods and spirits through Blotar and other means is our spiritual growth, our very soul progression, the land spirit energy bathes us through our honorable deeds and sacrafices. This builds up our Hamingja (spiritual luck, or Karma as known in the Eastern world), and strengthens our spiritual connection to the Gods. We believe that moving any of these now set stones or other land matter will upset these spiritual energies causing us disasterous, real and certain spiritual damage.

40.) Because of our spiritual connection to the land spirits, and because our goal is to invite these spirits to reside on the land and make it their home, we cannot share land with any group that would salt or "Banish" spirits in their rituals. The group(s) affiliated with Wicca "Banish" land spirits before their ceremony.

D. ARTIFACTS

41.) We require and wear a.) Thor's Hammer (Mjollnir); and/or b.) a Talisman or medallion usually aspecting a specific Deity or energy, such as, but not limited to, a Valknut (3 triangles), or Rune or Bindrune for protection. For ceremony we utilize a Bowlie; Drinking Horn; Oathring; Gandr; Altar cloths; Runes; Cardboard or wooden Sax; Mead; Fresh Sprig; Religious symbols on cloth banners to represent Gods or Hearths; Hlath; Candles; and a Hallowing Hammer (usually wooden due to prison setting).

E. PRISON OFFICIALS CONDUCT

42.) Defendants Subia, Martel, Long, Jackson, Lackner, Kaplan, Petersen, and John/Jane Does were put on notice and refused to provide Benches and Tables on plaintiffs religious grounds for study accomodations. All other faith groups, including the Native Americans, were provided seating and tables for their study groups. Defendants Cates and Grannis refused to enforce and protect said rights to equal treatment when plaintiffs appealed. Such actions also hindered the disabled from participating in religious services and study. (MCSP-09-00428; MCSP-09-01309.)

43.) Defendants Subia, Martel, Long, Jackson, Lackner, Barham, Baptista, and Jonhn/Jane Does, denied plaintiffs access to state funds for the purchase of religious property, while they afforded state funds to other religious groups--including their own--for books and congregal property. Plaintiffs have records, and will obtain additional records on discovery, of thousands of dollars obtained for the purchase of books and other materials for their own, and other groups. Defendants Cate, and Grannis refused to enforce and protect said rights when plaintiffs appealed.

44.) Defendants Subia, Martel, Long, Jackson, Lackner, Kaplan, have acquiesced to plaintiffs being physically hit, and sacred artifacts to be knocked off the harrow, by sporting equipment (handballs) during religious services without intervention. Plaintiffs requested that defendants raise the fence, or close and relocate the handball court as it is only approximately Ten Feet away. Defendants denied this request. Defendants Cate and Grannis failed to enforce and protect said rights when plaintiffs appealed.

45.) Defendants Martel, Jackson, Lackner, Barham, and John/Jane Does, took away plaintiffs Chapel Classroom time slots to give to other religious groups. (41 Christian time slots; 8 Islamic time slots; 4 Jewish time slots; 3 Buddhist time slots.) Defendants declared that "Earth-based Groups" are an outdoor religion not entitled to Chapel Classroom time. Plaintiffs must now sit in the dirt when they study without access to a chalk board.

46.) Defendant Chaplain S. Barham, receives his paycheck from the General Fund in California. Defendant refuses to sign or process the business of pagan groups, even though his state title under promulgated regulations require him to see to the needs of all inmates, he has asserted that this interaction violates his own religious rights and has a pending lawsuit on this issue. Defendants Cate and Grannis refused to enforce and protect the Federal Constitutional mandate that the Government shall not endorse any religion, when plaintiffs appealed. defendant S. Barham is not a Volunteer.

47.) Defendants Subia, Martel, Long, Jackson, Lackner, have endorsed and favored the Native Americans over plaintiffs by allotting them land size 2/3 larger than the Odinist grounds. At one point plaintiffs numbering 20 had to fit into a 525 Sq. Ft. square area with no seating to conduct Yule services. Defendants Cate and Grannis failed to enforce and protect plaintiffs rights against discrimination when they appealed.

48.) Defendants Martel, Long, Jackson, Lackner, Kaplan, and John/Jane Does, after 3 years of incident free night services which relate to lunar rites and observances, defendants illiminated night

grounds time, even though plaintiffs are under direct gun coverage and lighting; and even though defendants allow inmates to participate in sporting events just 10 ft. away from the religious grounds. Defendants have implicitly declared that sporting events are important while religious freedoms are not. Defendants Cate and Grannis refused to enforce and protect plaintiffs rights when they appealed.

49.) Defendants Martel, Kaplan, Baptista, Barham, and John/Jane Does, allow mainstream faith groups to light candles in the Chapel. When plaintiffs light candles in the Chapel (when we were allowed to use it), our ceremonies are interrupted, and we were chastised by Barham as violating fire code. Defendants suggest that fire codes only apply to pagan groups. Defendants Cate and Grannis failed to enforce and protect plaintiffs against blatant discrimination and harrassment when we appealed.

50.) Defendants Martel, Long, Jackson, Lackner, Minnick, Petersen, Kaplan, have interfered with plaintiffs attempt to possess, purchase, congregate religious items (Drinking horns, Bowlies, ect.) by either ignoring special purchase requests; denying requests on arbitrary grounds; deny requests by ignoring regulations; denying requests to mark drinking cups to take the place of the drinking horn(s); and when plaintiffs handcraft an item to fullfill spiritual need and authenticity, defendants confiscate the items. Defendants Cate and Grannis refused to enforce and protect plaintiffs rights to the exercise of religious freedoms when we appealed.

51.) Defendants Subia, Martel, Long, Jackson, Lackner, Kaplan, approved plaintiffs "Fire Pit" which is used for special events; when after it was built with stones and cement, plaintiffs were told thay COULD NOT burn fire in it other than the lighting of candles. The Native Americans fire pit is just 15-20 Ft. away where they burn every Saturday. Defendants Cate and Grannis refused to enforce and protect plaintiffs rights against discrimination when they appealed.

52.) Defendant Subia, Long, and John/Jane Does, without justifiable cause, interfered with plaintiffs access to a spiritual advisor, specifically Stephen A. McNallen, when they suspended and pulled his prison gate pass, while allowing other faith groups access to a spiritual advisor to assist religious business. Then defendants tell plaintiffs to find a spiritual advisor to assist in our religious needs. Defendant Cate and Grannis refused to enforce and protect plaintiffs liberty interests to be free from discrimination when we appealed.

53.) Defendants Martel, Kaplan, have intentionally hindered plaintiffs requests for special events on religious grounds, even when institutional procedures are followed. (MCSP-09-01646), specifically, request for access on 9-22-09 was hindered and by the time plaintiff exhausted his appeal remedy, the issue became moot as the time for the event had passed. Defendants Cate and grannis refused to enforce and protect plaintiffs religious practice when we appealed.

54.) Defendants Kaplan, Alexander, interrupted plaintiffs religious services to confiscate the Altar Cloth and 'Kindred Banner' (items authorized by regulation); when plaintiff Birdwell

filed an appeal as a 'Citizen's Complaint' against defendant Kaplan, defendants Kaplan, Fletes, Barroga, Rodriguez (all assigned post in the Facility C Program Office), Delacruz, and John/Jane Does, engaged in a conspiracy of retaliation which began with the confiscation of legal documents from plaintiff's religious litigation file; then to 'manufacture' a disciplinary report against plaintiff for conduct not prohibited by any rule or regulation (personal writings on plaintiff's computer) for the purpose of removing plaintiff from his job position as Clerk in the Law Library, and to suspend his Clerks Chrono and computer use. Only when plaintiff agreed to capitulate and withdraw his Citizen's Complaint against defendant Kaplan did defendant Barroga reduce the disciplinary report to a CDCR 128A. Plaintiff was warned that if he continued his course of litigation that the report would be reinstated and that he would be removed from the facility and sent elsewhere away from his religious circle. This action and threat has 'chilled' plaintiffs litigation. Defendant Kaplan stated (when he took the Kindred Banners) that "[he] called that air strike" and the month before he stated "I am like a sniper in the bush, everything religious I hit dies." This warlike terminology against the Odinist community coupled with threats and actions of retaliation has unconstitutionally chilled plaintiffs litigation. Plaintiffs remain under this current threat by defendants.

55.) Defendant Kaplan and Barroga maliciously declared that plaintiffs sacred symbol the 'Odins Cross' is a "hate Symbol" which may not be displayed during services. Defendants allow Christians to display their cross during services, and the christian cross is

displayed on the walls of the Chapel which is supposed to be a nuetral religious area. Defendants Cate and Grannis failed to enforce and protect plaintiffs rights against religious discrimination when plaintiffs appealed.

56.) Defendants Martel, Kaplan, John/Jane Does denied plaintiffs request for religious 'Banquets' and night activities, yet allowed the Muslim inmates to have their banquets and night activities without any supervision or gun coverage in the Chapel at night. Defendants Cates and Grannis failed to enforce and protect plaintiffs right against religious discrimination when plaintiffs appealed.

57.) Defendants Martel, Kaplan, Rodriguez, John/Jane Does, refused plaintiff Mayfield a cell move because "[he] was an Odinist" and that he was trying to "stack Odinists" in the Housing Unit (there were only two Odinists in Unit 14), while defendants allowed cell moves for other inmates. These negative decisions based on religious affiliation were discriminatory, and defendants refused to correct said action.

58.) Defendants Martel, Kaplan, allowed a correctional officer to confiscate and destroy plaintiff Mayfield's religious book(s) including the Poetic Edda which is the Asatru version of the bible. This persecution and harrassment was condoned by defendants who are in the charge and supervision of their subordinate officers, and failed to protect plaintiffs rights.

59.) Defendant Stanford, confiscated milk crates from the Odinist religious grounds used for seating by ADA inmates. Defendant

stated that if plaintiffs were christians, they would be in the Chapel enjoying the luxary of seating. The appeals coordinator has refused to respond to appeal of this issue after several attempts as indicated by plaintiff Birdwell's appeal.

F. <u>THE DESTRUCTION AND ILLIMINATION OF THE ASATRU/ODINIST RELIGIOUS GROUNDS</u>

60.) Defendants Martel, Kaplan, Jackson, Lackner, John/Jane Does, ordered, and began the eradication of the Asatru/Odinist grounds; destroying the 'Ring of Mystery'; destroying the 'Ancestral Mound'; destroying all other sacred artifacts including the fire pit and harrow; pulled up the fencing, to build a Universal land area that all pagan groups must share, and did so over the top of Native American sacred ancestral ash, which was a desecration of hallowed land, and the destruction of plaintiffs ability to practice their faith, as the faith may not be practiced on grounds where other groups banish spirits. Defendant Kaplan has ordered that the Odinists will not be able to re-establish the Ancestral mound; Ring of Mystery, or any other sacred ritual items on these new grounds. Plaintiffs no longer have a place to practice their faith. Defendants actions were not the "least restrictive means" to serve a penological interest, but were the most eggregious manner possible in their continued action of persecution, harassment, hate crimes, and discrimination. As a result plaintiffs have suffered real and certain spiritual damage to their vested liberty interests.

## VII.

## CAUSES OF ACTION

COUNT ONE: RELIGIOUS PRACTICE AND FREEDOM/1st AMENDMENT

61.) Defendants, through their intentional actions, inactions, pattern of conduct, after having been placed on notice of plaintiffs constitutional rights, violated, and continues to violate plaintiffs right to Religious Practice and Freedoms guaranteed by the First Amendment of the United States Constitution, and there is no rational relation between these violations and any legitimate penological interests.

COUNT TWO: RELIGIOUS DISCRIMINATION/1st AMENDMENT

62.) Defendants, through their intentional actions, and pattern of conduct, after having been placed on notice of plaintiffs constitutional rights, violated, and continues to violate plaintiffs rights not to be discriminated against because of their religious affiliation, which includes slander, harassment, and persecution, under the First Amendment of the United States Constitution, and there is no rational relation between the dissimilar treatment and any legitimate penological interest.

COUNT THREE: RLUIPA VIOLATIONS/1st AMENDMENT

63.) Defendants, through their intentional actions, have imposed a substantial burden on plaintiffs exercise of religion, without a compelling government interest, and without utilizing the least restrictive means to further any government interest. To the contrary, defendants have initiated the most eggregious imposition possible, when they denied and took land from plaintiffs.

COUNT FOUR: AMERICANS WITH DISABILITIES ACT (ADA)

64.) Defendants, through their intentional actions and inactions, after having been placed on notice of plaintiffs constitutional rights, refused, and refuses to provide accomodations to the disabled who are ADA certified, so that they may equally participate in religious programs. There is no rational relation between this discriminatory conduct and any legitimate penological interest.

COUNT FIVE: ESTABLISHMENT CLAUSE VIOLATION/1st AMENDMENT

65.) Defendants, through their intentional actions, by favoring other religions over plaintiffs, have endorsed--under color of authority--a religion in violation of the Establishment Clause (Separation of Church and State) of the First Amendment of the United States Constitution.

COUNT SIX: ESTABLISHMENT CLAUSE VIOLATION/1st AMENDMENT

66.) Defendants, employing a Chaplain from the California General Fund, to represent, care to, and process business of, a specific religious group, is an indorsement of a religion in violation of the Establishment Clause of the First Amendment of the United States Constitution.

COUNT SEVEN: PENDENT JURISDICTION/STATE LAW

67.) Defendants, through their intentional actions, have violated obstruction, persecution, harrassment, discrimination, and hate crimes provisions of state law, Cal. Penal Code §422 et.seq.

## VIII.

## PRAYER FOR RELIEF

68.) Plaintiffs request an order declaring that defendants have acted in violation of the United States Constitution; the Religious Land Use and Institutionalized Persons Act of 2000; the American with Disabilities Act; and state law.

69.) Plaintiffs request an injunction compelling defendants to provide land back to the Asatru/Odinists; cease intrusive restrictions without a compelling government interest; cease discrimination and treat all religious groups equally; equal access to state funds; access to spiritual artifact property; to display Odins Cross during religious services; and restraining order against persecution, harassment, based on religious affiliation.

70.) Plaintiffs request compensatory damages in the amount of $10,000.00.

71.) Plaintiff requests punitive damages as follows:

Defendant N. Grannis, $17,000.00;
Defendant R. Subia, $17,000.00;
Defendant M. Martel, $17,000.00;
Defendant D. Long, $17,000.00;
Defendant L. Jackson, $17,000.00;
Defendant H. Lackner, $17,000.00;
Defendant M. Kaplan, $17,000.00;
Defendant C. Barroga, $17,000.00;
Defendant R. Rodriguez, $17,000.00;
Defendant R. Fletes, $17,000.00

72.) Plaintiffs DO NOT seek compensation for mental or emotional distress.

DATED: 3-17-10

Plaintiffs declare under penalty of perjury the foregoing is true and correct. Executed this 17 day of MARCH 2010. Ione, California. 95640.

BILLY P. BIRDWELL II
#D-70643

TROY RACKLEY
#H-78547

ROY FAIRWELL
#K-70353

MICHAEL MAYFIELD
#E-24161

TERRY LEFAVOUR
#T-89240

# EXHIBIT COVER PAGE

EXHIBIT

DESCRIPTION OF THIS EXHIBIT: RELIGIOUS GROUNDS

NUMBER OF PAGES TO THIS EXHIBIT: 3 PAGES

JURISDICTION: (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Appellate Court
- [ ] State Supreme Court
- [x] United States District Court
- [ ] Federal Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury



WICCAN/PAGAN GROUNDS
25'X21' (525 SQ.)
WATER SOURCE
ENTRANCE
S
W
ASATRU GROUNDS
25'X21' (525 SQ.)
FIRE PIT (NOT APPROVED FOR BURNING)
MEDITATION PATH
HARROW (ALTAR)
LOCKER
N
E




# NATIVE AMERICAN GROUNDS

# (37' X 72' = 2664 Sq.)

THE NEW PLAN
STARTED 3/12/10

